(75 South. 892)

STATE v. PENSACOLA, ST. ANDREWS & GULF S. S. CO. (1 Div. 967.)

(Supreme Court of Alabama. Feb. 15, 1917. Rehearing Denied May 31, 1917.)

1. INTOXICATING LIQUORS ☞251—SEIZURES—INTERVENTION.

A carrier which has lawfully assumed the delivery of an interstate shipment of liquor, authorized by Act Jan. 27, 1915 (Gen. Acts 1915, p. 39 et seq.), may intervene in a seizure thereof under Act Jan. 23, 1915 (Gen. Acts 1915, p. 8 et seq.) § 22, as a "person claiming any right, title or interest" therein.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 389, 390.]

2. PLEADING ☞214(3)—EFFECT OF DEMURRER.

Demurrer to intervention in seizure of a shipment of liquor admits the facts alleged showing the shipment was lawful.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 530–532.]

3. INTOXICATING LIQUORS ☞139 — INTERSTATE SHIPMENT—QUANTITY IN CARRIER'S POSSESSION.

The provision of Act Jan. 27, 1915 (Gen. Acts 1915, p. 39 et seq.), prohibiting possession at any one time of more than a certain quantity of liquor by any person or corporation, does not apply to an interstate carrier; the act permitting the importation of liquor in such quantity to every adult citizen.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 149.]

4. INTOXICATING LIQUORS ☞139 — INTERSTATE SHIPMENT — HOLDING FOR DELIVERY.

Act Jan. 23, 1915 (Gen. Acts 1915, p. 8 et seq.) § 23, declaring it unlawful to receive liquor for storage, distribution, or on consignment for another, or to maintain a warehouse therefor, does not apply to a carrier holding for delivery an interstate shipment of liquor, authorized by Act Jan. 27, 1915 (Gen. Acts 1915, p. 39 et seq.).

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 149.]

Appeal from City Court of Mobile; O. J. Semmes, Judge.

The State of Alabama, through its authorized officer, seized and condemned 850 cases of beer found in the possession of the Pensacola, St. Andrews & Gulf Steamship Company in Mobile. On appeal to the city court from the recorder's court where the seizure was made the respondent answered, setting up that it was the common carrier by vessel, making weekly sailings between the ports of Mobile, Ala., and Pensacola, Fla.; that the packages or cases of liquor seized were delivered at Pensacola, Fla., by the shippers thereof to said steamship company to be transported to Mobile, there to be delivered to the consignees in the manner and upon the proceedings prescribed by the laws of the state of Alabama, and that when seized the liquor was being held in the warehouse of the common carrier to be delivered to said consignee; that each package contained only 48 12-ounce bottles of lager beer and nothing more; and that each of said packages was billed and consigned to a separate person or individual. The court overruled demurrers to this answer, and the State appeals. Affirmed.

W. L. Martin, Atty. Gen., and Norborne R. Clarke, of Mobile, for the State. Stevens, McCorvey & McLeod, of Mobile, for appellee.

SAYRE, J. [1, 2] Except in the case of liquors such as are generally spoken of as prohibited, we take it there would be no disputing the proposition that a common carrier is entitled to retain possession of goods held by it for delivery to the consignee as against all persons other than the consignee or the owner of a paramount title. Code, §§ 2462, 2464. Section 22 of the act "to promote temperance," etc. (Gen. Laws 1915, p. 8 et seq.), approved January 23, 1915, provides that:

"Any person claiming any right, title or interest in the liquors and vessels seized under such warrant may interpose a verified answer controverting the allegations of the complaint upon which said warrant was issued and controverting the ground or grounds upon which the warrant was issued, and shall propound in such answer what right, title or interest he claims in the liquors or vessels seized."

This language of the statute is exceedingly broad in describing the property right which will justify an intervention, and we see no reason for holding that it shall not be applied in favor of the carrier who has lawfully assumed the duty of delivering an interstate shipment of liquors. The act "to further promote temperance," etc. (Gen. Laws 1915, p. 39 et seq.), approved January 27, 1915, legalizes the interstate shipment of liquors under the conditions alleged in appellee's intervention. We are of opinion, therefore, that the trial court correctly ruled against the first ground of the state's demurrer to appellee's intervention, which said demurrer, while admitting of course the facts alleged in the intervention, and hence that the shipments were not unlawful, took the point that the intervention

failed to show that appellee, as carrier, had any right, title, or interest in the liquors seized such as entitled it to intervene in the premises.

[3, 4] It appeared on the face of appellee's intervention that the liquors in question were brought by water from Pensacola, Fla., to Mobile, in this state, on May 20, 1916, and that "as a common carrier" appellee held said liquors in its possession, undelivered, until they were seized by the chief of police of the city of Mobile on May 26, 1916. The state asserted by its second ground of demurrer that, notwithstanding appellee's broad averment that it held the liquors as a common carrier, the more particular facts averred in the intervention, viz. that, in effect, appellee had held the liquors for six days awaiting delivery, showed that appellee held them as a warehouseman in violation of section 23 of the act of January 23, 1915, which reads as follows:

"It shall be unlawful for any person, firm, association or corporation to receive for storage, distribution or on consignment for another prohibited liquors and beverages or any of them, or to have or maintain any warehouse or other place for the receiving, storing or distribution of liquors for another, and any person violating this section shall be guilty of a misdemeanor."

On a comprehensive view of the several enactments to which we have referred it seems clear to us that section 23, supra, can have no effect upon the interstate shipment and delivery of liquors allowed by the later act of January 27, 1915. Indeed, to hold otherwise would result in the nullification of the leading provisions of the latest enactment on the subject. The act of January 23, 1915, and the act printed at page 1 et seq. of the General Acts of 1915, both which went into effect June 30, 1915, contain various prohibitions against the shipment or storage of prohibited liquors in this state. With certain exceptions, which need not be detailed in this connection, they prohibit all possession of or dealing with prohibited liquors. Those provisions of the law which permit the interstate shipment and possession in this state of liquors in limited quantities are contained in the act of January 27, 1915, which for the most part went into effect upon its passage. This last act prohibits the possession of more than one-half gallon of spirituous liquors, etc., by any person, firm, or corporation at any one time, etc., and makes the possession of a larger quantity prima facie evidence that such possession is contrary to law, and these last-named provisions relating to quantity, etc., were made to go into effect at the same time with the general prohibitory enactment. To consider these special provisions in respect of quantity, etc., for a moment—for they too, if construed literally and without reference to other parts of this prohibition legislation, would serve appellant's purpose as well as section 23,

supra—it can hardly be said in reason that they were intended to operate in the case of carriers engaged in the transportation of liquors in interstate commerce under the regulations otherwise provided by the same act. It can hardly be imagined that the Legislature, while permitting the importation of liquors to every adult citizen of the state in certain limited quantities, intended that carriers engaged in the business thus authorized should not at any one time either carry or have possession of more than the amount limited to each individual. Practically that would nullify those provisions of the statute which permit importations; it would amount to reductio ad absurdum. Nor do we think section 23 of the act of January 23, 1915, was intended to apply to the case of interstate carriers otherwise operating within the provisions of the law. The act of which section 23 is a part does not in its other parts deal with the subject of permissible importations or their carriage in interstate commerce. That subject was treated in all its phases in the act of January 27th, passed afterwards. To give section 23 the operation contended for is impossible for several reasons: It would allow the first legislative expression to prevail over the last. Practically, as we have said, it would nullify other provisions of the law. It cannot be imagined that, while adopting every precaution against the traffic in liquors known to such legislation, though at the same time allowing the individual to import a limited quantity for his own use, the Legislature, if it had intended to impose an arbitrary limitation upon the time within which lawful shipments should be delivered, would have failed to express its will in plain language, or would have left the carrier, who cannot refuse lawful shipments, exposed to the hazard of determining according to the circumstances of every case just that moment of time down to which it will be liable to the consignee, after which it will be liable to the criminal laws of the state. Shipments being limited in quantity and frequency as prescribed, the enactments of 1915 contain no provision prohibiting the carrier who transports liquors in interstate commerce from keeping the shipments for the time shown by appellee's intervention. It is hardly necessary to say that, if for any reason the shipment was unlawful, the intervention could not avail appellee anything. The intervention alleged that the shipments were lawful. Without joining in the issue of fact thus proposed, in which case a trial would have been had to determine whether or not the liquors seized had been transported or were being held in violation of law, the state, by its demurrer, as we have said, admitted the facts alleged, and thus, under the law, left the trial court with no alternative but to find for appellee.

Affirmed. All the Justices concur.